Jean Cobb KRUM, Plaintiff,

v.

Richard D. SHEPPARD and Gordon P. Hurley, jointly and severally, Defendants.

Civ. A. No. 5152.

United States District Court
W. D. Michigan, S. D.

June 30, 1966.

Wickett & Erickson, Kalamazoo, Mich., Charles C. Wickett, Kalamazoo, Mich., of counsel, for plaintiff.

Robert C. Goussy, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION ON MOTION TO DISMISS

FOX, District Judge.

The central issue in this case is whether the plaintiff's cause of action, if any,

under the federal civil rights act, is barred by the Michigan statute of limitations relating to "actions to recover damages for injuries to person or property."

The complaint alleges that the defendants, Richard D. Sheppard and Gordon P. Hurley, state police officers, deprived the plaintiff of rights guaranteed him by the Constitution and laws of the United States. See 42 U.S.C.A. §§ 1983, 1985. The defendants have moved to dismiss the complaint upon the ground, among others, that the statute of limitations is a bar to this action.

Since the factual background of this case is fully set out in People v. Krum, 374 Mich. 356, 132 N.W.2d 69 (1965), the following summary of the facts should be adequate.

The defendants were maintaining a road block at the Mackinac Bridge, searching for two escaped convicts. When a passenger in the back seat of plaintiff's car refused to move a duffel bag and some equipment after being requested to do so by defendant Sheppard, and after the car had been moved to the side of the bridge, as ordered by the officers, the plaintiff got out and told the officers that there was no reason for them to search the car. The defendants claimed that this aroused their suspicions, and a rather animated discussion followed.

At some point during this discussion, Trooper Hurley resumed checking other cars. While checking another car, he claimed that the plaintiff stepped between him and the car, asking for his name and badge number, and that finally the plaintiff brushed against him, moving his carbine to one side. The plaintiff was then arrested and taken to the Mackinac County jail.

Following the plaintiff's arrest, his companions allowed the car to be searched, and no fugitives or illegal articles were discovered.

In April of 1961, the plaintiff was convicted of interfering with an officer in the performance of his duties, and the Supreme Court of Michigan affirmed his conviction.

Section 1983 of Title 42 U.S.C.A. was derived from, "Act Apr. 20, 1871 c. 22, § 1, 17 Stat. 13." This Act grew out of a message sent to Congress by President Grant on March 23, 1871, in which he said:

"A condition of affairs now exists in some States of the Union *rendering life and property insecure* and the carrying of the mails and the collection of the revenue dangerous. The proof that such a condition of affairs exists in some localities is now before the Senate. That the power to correct these evils is beyond the control of State authorities I do not doubt; that the power of the Executive of the United States, acting within the limits of existing laws, is sufficient for present emergencies is not clear. Therefore, I urgently recommend such legislation as in the judgment of Congress shall effectually secure *life, liberty, and property,* and the enforcement of law in all parts of the United States * * *.[7]

7. Cong Globe 42d Cong, 1st Sess, p. 244." (Emphasis supplied.) Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, 497. (1961).

The Section in question creates a federal right to be enforced by federal courts. Monroe v. Pape, supra, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d at 501. Section 1983 of Title 42 U.S.C.A. states:

"Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

There is no federal statute of limitations applicable to actions under that Section of the Civil Rights Act, and the Civil Rights Act does not itself contain

any provision limiting the time within which such actions may be brought.

■ It is settled that: "There being no federal statute fixing a limitation on civil rights actions, the applicable statute of the forum state would control. [Citing O'Sullivan v. Felix, 233 U.S. 318, 322, 34 S.Ct. 596, 58 L.Ed. 980, 982; Mohler v. Miller, 235 F.2d 153, 155 (CA 6, 1956); Wilson v. Hinman, 172 F.2d 914, 915 (CA 10, 1949), cert. den. 336 U.S. 970, 69 S.Ct. 933, 93 L.Ed. 1121; Kenney v. Killian, 133 F.Supp. 571, 575–576 (W.D.Mich., 1955)]." Crawford v. Zeitler, 326 F.2d 119, 121 (CA 6, 1964).

The Michigan statute provides: "All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry." M.S.A. § 27A.5869, Comp. Laws Supp. 1961, § 600.5869.

The search of plaintiff's automobile and the arrest of the plaintiff, which are alleged to have been illegal in Counts I and II, both occurred on September 26, 1959. Plaintiff's cause of action, if any, on these two Counts accrued on that date.

Count III alleges that the defendant Hurley filed a false complaint against the plaintiff and that both of the defendants testified falsely at the two preliminary hearings and at the trial, all of which is alleged to be in deprivation of the plaintiff's civil rights. The complaint which charged the plaintiff with obstructing an officer in the performance of his duties, was filed on September 27, 1959. Following a preliminary examination in February of 1960, an amended complaint was signed in October of 1960, and a second preliminary examination was held in November of 1960. The trial was held in April of 1961.

Therefore, any rights which plaintiff has under Count III accrued before the end of April 1961. Since Count IV alleges a conspiracy to deprive plaintiff of his civil rights by means of the acts alleged in the other three Counts, any cause of action for conspiracy accrued not later than the end of April 1961.

The statute which was in effect at the time any cause of action may have accrued to the plaintiff is M.S.A. § 27.605, Comp.Laws 1948, § 609.13, which read in pertinent parts, as follows:

"All actions in any of the courts of this state shall be commenced within 6 years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: Provided, however,

1. * * *

2. Actions to recover damages *for injuries to person* or property and actions for trespass upon lands shall be brought within 3 years from the time said actions accrue, and not afterwards;

3. Actions * * * for false imprisonment, for malicious prosecution, * * * shall be brought within 2 years from the time the cause for action accrues, and not afterwards." (Emphasis supplied.)

The plaintiff contends that none of the enumerated exceptions apply to a cause of action under the Civil Rights Act, and that the general six-year provision therefore governs. The defendants contend that subsection 2 applies.[1] If defendants' contention is correct, then plaintiff's action is barred inasmuch as the complaint in this action was filed on September 24, 1965, 5 years and 363 days after the alleged illegal search and arrest, and four years and five months after the criminal trial.

---

1. Although it could be argued that Section 3 of M.S.A. 27.605, Comp.Laws 1948, § 609.13(3), should apply to Count II of plaintiff's complaint, it is the opinion of the court that because the plaintiff has based his action on the Civil Rights Act, the cause of action stated in Count II is of broader nature than a tort action for false arrest or malicious prosecution, and consequently should not be governed by the shorter two-year statute of limitations. See Monroe v. Pape, supra.

■ The question which this court must decide is whether an action for deprivation of civil rights is one "for injuries to person or property" within the meaning of M.S.A. § 27.605(2), Comp.Laws 1948, § 609.13(2).

■ The Civil Rights Act was enacted primarily to enforce the Fourteenth Amendment. As was said in Monroe v. Pape, supra, 365 U.S. 167, 81 S.Ct. at 476, 5 L.Ed.2d 492, at 496:

"Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes.' 17 Stat. 13."

■ The Fourteenth Amendment protects the most fundamental personal rights and liberties guaranteed to any citizen of the United States. When one is deprived of his civil rights, it is clear that the injury is to his person and that he is the only one who has standing to sue.

In Williams v. Kansas City, Mo., 104 F.Supp. 848, 857 (W.D.Mo., 1952), the court concluded:

"It is an elementary principle in constitutional law that *it is the individual who is entitled to the equal protection of the law,* and if he is denied a facility or convenience which, under substantially the same circumstances, is furnished to another citizen, the *individual alone* may complain that his constitutional privilege has been invaded, and he has no standing to sue for the deprivation of similar civil rights of others." (Emphasis supplied.)

A deprivation of civil rights may, of course, involve an injury to property. However, even in a civil rights action where property has been damaged, the basis of the civil rights action is still the violation of personal rights. Indeed, if an injury to property were all that was involved, the plaintiff would be left to an action for trespass in the state courts. Nonetheless, having decided to bring this action under the Civil Rights Act, the rights which the plaintiff claims were violated are in their very nature personal rights. Moreover, in each Count of his complaint, plaintiff charges the defendants with conduct violative of the rights, privileges and immunities secured to him under the Constitution of the United States. This indicates quite clearly that the plaintiff's claim must be for "injuries to the person" within the ordinary meaning of that term.

■ The only basis for federal jurisdiction under the Civil Rights Act is the deprivation under color of state law of "any rights, privileges, or immunities secured by the Constitution and laws."[2]

---

**2.** Plaintiff relies upon Sweet v. Shreve, 262 Mich. 432, 247 N.W. 711 (1933). The statements in Sweet to the effect that subsection 2 of the statute of limitations, supra, only applies where there is an injury to specific property was *obiter dictum.* The Sweet case found:

"There is testimony to show that the *fraud* was not discovered until within a year and a half prior to the bringing of the suit.

"Furthermore, we do not believe that the present action constitutes one for injuries to person or property. It is a suit brought for the recovery of damages caused plaintiffs as a result of *fraudulent representations made* by defendants. Previous Michigan decisions have assumed that *actions for fraud* are covered by the general six-year limitation in section 13976. See Holman v. Moore, 259 Mich. 63, 67, 242 N.W.

839; Ramsey v. Child, Hulswit & Co., 198 Mich. 658, 667, 165 N.W. 936; Armstrong v. Rachow, 205 Mich. 168, 179, 171 N.W. 389. While there are some authorities in other jurisdictions to the contrary and it may be claimed that the precise point here involved was not carefully considered in the cases cited, we believe the correct rule to be that, where the damages claimed are not for injuries to specific property, subsection 2 of section 13976, C.L.1929, does not apply, but the action may be brought within the general six-year provisions in section 13976, C.L.1929."

It is apparent that the statement that the three-year limitation was believed to apply only to actions involving specific property was not necessary to the decision, and there is nothing to indicate that it was argued and carefully considered. No reasons were given as to why the

■ With respect to the allegation of a conspiracy in Count IV, there is no reason why this should be treated any differently than the other alleged causes of action. At common law, the ancient writ of conspiracy was changed to an action of trespass on the case in the nature of a conspiracy. In Michigan the cause of action does not result from the conspiracy, but from the wrongful acts causing damage which were done in furtherance of the conspiracy.

■ The foundation of the action is not the conspiracy, but the damages. Auto Workers' Temple Ass'n v. Janson, 227 Mich. 430, 433, 198 N.W. 992 (1924); Fenestra, Inc. v. Gulf Amer. Land Corp., 377 Mich. 565, 594, 141 N.W.2d 36 (1966).

■ As indicated above, the damages resulting from a deprivation of civil rights are injuries to the person. Therefore, the claim of a conspiracy to deprive the plaintiff of his civil rights is also a claim of "injuries to the person" within the ordinary meaning of that term.

The plaintiff has produced no case which construes the "injuries to person" phrase of the Michigan statute of limitations, and the court has found none. However, a similar statute of Illinois was found to apply to an action under the Civil Rights Act in Gordon v. Garrson, 77 F.Supp. 477 (E.D.Ill., 1948). The court said:

"There remains to be considered the subject of the statute of limitations.

court believed this to be the correct rule. The Sweet court stated that previous Michigan decisions had assumed the general six-year limitation applicable to actions for fraud. The Sweet case has been cited only once in Schreiber v. Loew's Incorporated, 147 F.Supp. 319 (W.D. Mich., 1957).

The common denominator between Sweet and Schreiber is "fraud." Schreiber depended primarily on Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 398, 27 S.Ct. 65, 67, 51 L.Ed. 241, an antitrust action for treble damages where the court said:

"But we are satisfied, on the whole, and in view of its juxtaposition with detention and conversion, that the phrase has a narrower intent. It may

Section 15 of Chapter 83, Illinois Revised Statutes, establishes a two-year limitation on actions for damages *for injury to the person.* In an analogous situation, the Supreme Court in O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980, held that the state one-year statute of limitations for actions for damages as prescribed by the Louisiana Civil Code, arts. 3536, 3537, governed a civil action for damages for assault committed in attempting to prevent plaintiff from voting, contrary to this title, in view of the failure of Sections 43, 44 and 45 of Title 8, U.S.C.A., to prescribe any specific limitation. Therefore, the claim against Irwin is barred by the Illinois two-year statute of limitations unless the statute was tolled because, at the time the cause of action accrued, plaintiff was imprisoned." At P. 480. (Emphasis supplied.)

While the Gordon case did, however, involve physical injury to the plaintiff, it did arise under the same federally protected civil rights.

In addition, the legislature of the State of Michigan has enacted a set of rules for the construction of its statutes. M. S.A. § 2.212, Comp.Laws 1948, § 8.3, provides:

"Sec. 3. In the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature."

be that it has a somewhat broader scope than was intimated below, and that some wrongs are within it besides physical damage to tangible property. But there is a sufficiently clear distinction between injuries to property and 'injured in his business or property,' the latter being the language of the act of Congress. * * * But when a man is made *poorer by an extravagant bill* we do not regard his wealth as a unity, or the tort, if there is one, as directed against that unity as an object. We do not go behind the person of the sufferer. We say that he has been *defrauded* or *subjected to duress,* or whatever it may be, and stop there." P. 245 L.Ed. (Emphasis supplied.)

One of the rules, M.S.A. § 2.212(1), Comp.Laws 1948, § 8.3(1), reads as follows:

> "Sec. 3a. All words and phrases shall be construed and understood according to the *common and approved usage* of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." (Emphasis supplied.)

Thus, according to common and approved usage, the phrase, "injuries to person" has a much broader meaning than "physical injuries," and includes, for example, such things as loss of consortium, libel, slander, and deprivation of civil rights.

Also, M.S.A. § 2.212(12), Comp.Laws 1948, § 8.3(12), is applicable here. It provides:

> "Sec. 3-l. The word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals."

The legislature must be deemed to have had this definition in mind and to have intended the phrase "injuries to person" to apply to injuries to corporations as well, at least in the absence of an expression of a contrary intent.[3]

Finally, if the legislature had intended that subsection 2 apply only where there was a physical or bodily injury to the person, it would have been a simple matter for it to express that intent clearly and unambiguously. It could have used the words "physical injury" or "bodily injury" to limit the application of this subsection. Since most legislators are skilled in the use of language, we may presume that the failure to use such modifying words indicates an intent to give the phrase "injuries to person" its usual, broader meaning.

For the foregoing reasons, we hold that an action for damages for deprivation of civil rights is an action for damages for "injuries to person" within the meaning of the Michigan three-year statute of limitations (M.S.A. § 27.605(2)). The plaintiff's action is therefore barred, and the complaint must be dismissed.

---

3. Compare Chabre v. Page, 298 Mich. 278, 299 N.W. 82, 84 (1941), where the court was construing a word used in a statute and said that where the statute in question did not contain a definition of the term it must assume that the legislature had the statutory rules of construction in mind. Since "injuries to person" must include injuries to corporations according to the statutory definition of "person," and an injury to a corporation cannot be a physical or bodily injury, the legislature could not have intended to limit the application of the phrase "injuries to person" to physical or bodily injuries.